UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| TONI DENISE CHIBBER, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | CIVIL NO. 3:12cv850 |
| GREGORY ZOELLER, Attorney General, *et al.*, | ) | |
| Defendants. | ) | |

OPINION AND ORDER

This matter is before the court on a motion for judgment on the pleadings filed by the defendants, Gregory Zoeller ("Zoeller"), Mark Mader ("Mader"), Indiana State Board of Nursing ("State Board"), Jerry Burghduff ("Burghduff") and Kathy Franko ("Franko"), on November 7, 2013.

The plaintiff, Toni Denise Chibber ("Chibber"), proceeding *pro se*, filed a "Motion to Deny Defendants' Motions for Judgment and Stay of Discovery[1]" on November 25, 2013. On January 21, 2014, Chibber filed a "Direct Response to Defendants' Eighteen Points in Their Motion for Judgment on the Pleadings".

For the following reasons, the motion for judgment on the pleadings will be granted.

Discussion

After the pleadings are closed, a defendant may seek dismissal for failure to state a claim by a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c). The court reviews the motion

---

[1] On November 11, 2013, the defendants filed a motion to stay discovery, which was granted by the Magistrate Judge on December 9, 2013. On December 23, 2013, the defendants filed a motion to stay further proceedings pending ruling on their motion for judgment on the pleadings. The motion to stay was grented on January 14, 2014. Consequently, the court will not discuss these motions in the present order.

under the same standard as a motion to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). The plaintiff's factual allegations are taken as true, and the court draws all reasonable inferences in the plaintiffs favor. *Id*.

Under Rule 201(b) of the Federal Rules of Evidence, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicial notice of facts in the public record will not convert a motion for judgment on the pleadings to a motion for summary judgment. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013). Under this rule, a court may take judicial notice of adjudicative facts in another proceeding. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-82 (7th Cir. 1997). However, such notice may be limited to establishing the fact of such litigation and related filing; not for the truth of the facts asserted in such filings. *Id*. at 2082 n. 6.

Also, documents that are referred to by the complaint and are central to the plaintiff's claim will be considered part of the pleadings if submitted by the defendant in support of its motion to dismiss. *Venture Assocs Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993).

The federal rules of pleading require a plaintiff to allege 'enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Conclusory allegations are not

entitled to a presumption of truth. *Iqbal*, 556 U.S. at 680-681. A plaintiff can plead herself out of court by alleging facts showing that she is not entitled to relief. *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008). This necessarily occurs when, to prevail, the plaintiff must contradict a factual allegation in the complaint. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

A court will grant a Rule 12(c) motion when it appears that no claim has been stated and the moving party demonstrates that there are no material issues of fact to be resolved. *Guise v. BWM Mortg.*, 377 F.3d 795, 798 (7th Cir. 2004).

The background facts in this case are as follows. On February 2, 2009, Chibber, a registered nurse who was licensed in the State of Indiana, passed out while working at the Silverbrook Manor Nursing Home ("Silverbrook") in Niles, Michigan. Compl. ¶ II(1). She was taken by ambulance to the St. Joseph Regional Medical Center, which is located nearby in South Bend, Indiana. *Id*.

The hospital subsequently reported to State Police Trooper Kathy Franko that while Chibber was being treated in the emergency room for a drug overdose, hospital staff found controlled medications in Chibber's purse. The hospital alleged the medications were labeled with other persons' names and were from Silverbrook. Silverbrook subsequently informed Franko that it had pursued criminal charges against Chibber in Michigan. The Niles Police Department advised Franko that Chibber was arrested on a Michigan warrant.

As a result of the information that she received, Franko completed a Consumer Complaint on July 21, 2010, which she forwarded to the Office of the Indiana Attorney General, where it was received on August 9, 2010. In it, Franko asked the Attorney General and Nursing Board "to take appropriate action" against Chibber's registered nursing license and her practical

3

nursing license. Franko opened her case as an investigation of "Theft/Recovered Stolen Property" under the authority of Indiana Code Section 35-42-4-2. However, nowhere in the Consumer Complaint including her attached case reports and other attachments is there any mention that the State of Indiana has brought, is bringing, or will be bringing criminal charges against Chibber. *Id.*

In September 2010, as a result of receiving Franko's complaint, the State referred Chibber to the Indiana State Nurses Assistance Program ("ISNAP"). Compl. ¶ II(2). Chibber was then evaluated by a mental health professional. Compl. ¶ II(2). Chibber subsequently refused to enroll in a six-month monitoring program. Compl. ¶ II(2). The State, through the Indiana Professional Licensing Agency, filed a complaint on December 5, 2011, against Chibber's registered nursing license. On January 13, 2012, and again on May 25, 2012, the Board notified Chibber of a settlement/pre-hearing conference and final hearing date in her case. Both notices informed Chibber that the hearings were being held pursuant to Indiana's health professions standards statutes, Ind. Code § 25-1-9-1 to -21, and the statutes governing adjudicative proceedings under Indiana's Administrative Orders and Procedures Act ("IAOPA").

Chibber attended a pre-hearing/settlement conference on July 5, 2012, at which Board Chairman Burghduff and Deputy Attorney General Mader were present. Compl. ¶ II(2). On August 23, 2012, the Board sent her a notice of its final hearing, which was scheduled for September 20, 212. Chibber chose not to attend her administrative hearing. Compl. ¶ II(2). As a result, the Board issued Chibber a notice that it would enter a default order unless, within seven days, she filed a written motion asking the Board not to issue the order and stating the reasons for her request. The Board issued its default order on December 11, 2012. Chibber filed her

4

current Section 1983 Complaint in this court on December 18, 2012, in which she alleges violations of the Sixth Amendment, violations of the Due Process protections of the Fourteenth Amendment, violations of the Equal Protection Clause, perjury and subornation of perjury.

First, the defendants correctly argue that Chibber's Sixth Amendment claims should be dismissed because the Sixth Amendment does not apply to civil proceedings such as a license suspension. In her Complaint, Chibber alleges that she received notice that she was in violation of the state's criminal theft and receiving stolen property statute, Ind. Code § 35-43-4-2, in the Indiana State Police case report, which was reported on the Consumer Complaint that Detective Franko filed. Nowhere in her Complaint, however, does Chibber allege that she was ever arrested or arraigned, or that an Indiana prosecutor ever filed criminal charges against her. The Consumer Complaint is the only basis by which she alleges that she was "charged" with a felony, and the Consumer Complaint was simply part of the administrative action that was subsequently taken against her nursing license.

The Sixth Amendment, by its terms, applies to criminal prosecutions. Its guarantees do not apply to civil proceedings. *Turner v. Rogers*, --- U.S. ---, 131 S.Ct. 2507, 2516 (U.S. 2011) (noting "the Sixth Amendment does not govern civil cases"). The Nursing Board's action against Chibber's license was a civil enforcement action, not a criminal proceeding. Chibber had no right to a speedy trial, and the extent of her due process rights are covered by the Fourteenth Amendment.

Next, the defendants argue that Chibber's due process claims fail because she failed to avail herself of the available state procedures and remedies. As the Supreme Court has clearly instructed, before a state may take property from an individual, the Fourteenth Amendment's due

5

process clause requires the government to provide the individual with notice and an opportunity to be heard. *Jones v. Flowers*, 547 U.S. 220 (2006) "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

In the present case, Chibber alleges that Deputy Attorney General Mark Mader initiated the administrative action against her in September 2010. Chibber has not – and cannot – show a due process violation because she failed to participate in her administrative hearing and avail herself of the due process that the State afforded her. Under state law and regulation, ISNAP is a separate rehabilitation program. Ind. Code § 25-23-1-31; Ind. Admin. Code 7-1-1 to 7-1-7. Its actions cannot be imputed to the Defendants. The only enforcement action that occurred was the July 5, 2012, pre-hearing/settlement conference (which Chibber describes as a preliminary hearing) which was held after she refused to participate in ISNAP's drug monitoring program and after the Administrative Complaint was filed.

Chibber alleges that Burghduff prevented her from saying anything in her defense at this meeting and that Mader refused to provide her with a copy of all the evidence. However, as the defendants note, even if these allegations are taken as true, they do not constitute a violation of her procedural due process rights because these alleged acts occurred at a pre-hearing/settlement conference. Chibber clearly had notice of her license hearing because it was discussed during this preliminary hearing. Moreover, she states that she informed the hearing board that she was not going to attend. Further, notice was required by Indiana's Administrative Orders and

6

Procedures Act ("IAOPA"). Ind. Code § 4-21.5-3-3, -5, -6, -20. The administrative record clearly shows that notice was sent to Chibber. The law provided Chibber with an opportunity to attend the hearing and be heard. *See* Ind. Code §§ 25-1-9-1, 25-1-9-4(a)(8) (authorizing such hearings); §§ 4-21.5-3-14 to -32 (setting forth the procedures for the hearing). Each of the notices that Chibber received informed her of the Board's statutory authority for holding the disciplinary hearing and invited her to contact the Board's director for further information regarding the hearing procedures. The statutes cited in the notices included the statutes detailing the hearing procedures under IAOPA.

When Chibber did not show for her administrative hearing on September 27, 2012, the Board sent her a notice of its proposed default order. This notice informed Chibber that she could submit a written motion within seven days of service, asking the Board not to enter the default order. On December 11, 2012, the default order was entered.

Clearly, Chibber cannot assert a denial of due process when she did not even attempt to partake of the procedural protections afforded her. Moreover, even if Chibber had attended the hearing and been denied her rights under state law, she then had a right to petition for judicial review and obtain a court order to enforce her rights. Chibber's conclusory assertions suggesting that the administrative hearing would be a sham are not entitled to a presumption of truth. See *Iqbal*, 129 S. Ct. at 680-681.

Chibber also alleges that her constitutional rights were violated when, in 2009, the Nursing Board added the words "Valid to practice while reviewed" to her nursing license. Clearly, however, such notations do not rise to the level of a constitutional due process violation. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) (holding that such public notations may lead to a

reputational injury but do not directly deprive a plaintiff of liberty or property protected by the due process clause); *see also Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (holding that damages to future employment resulting from such reputational injuries still do not rise to the level of a constitutional violation).

It is also clear that Chibber has not alleged a substantive due process claim. Substantive due process claims are, as a general matter, limited to abuses of power that involve fundamental liberties or rights and are so egregious that they shock the conscience. *Chavez v. Martinez*, 538 U.S. 760, 774-76 (2003). When it comes to property interests, substantive due process claims are extremely limited. To bring a substantive due process challenge arising from the deprivation of a property interest, the plaintiff must show "either the inadequacy of state law remedies or an independent constitutional violation." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir.2003). *See also Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997) ("in cases where the plaintiff complains that he has been unreasonably deprived of a state-created property interest, without alleging a violation of some other substantive constitutional right or that available state remedies are inadequate, the plaintiff has not stated a substantive due process claim"). In the present case, the Complaint on its face shows that Chibber is not alleging more than a denial of her nursing license. As noted above, she cannot show that the state remedies were inadequate and thus she has failed to state a claim.

The defendants next argue that Chibber has failed to allege any factual basis for an equal protection claim. As the defendants point out, an equal protection claim requires an allegation of intentional discrimination and must show that this disparate treatment resulted from the plaintiff's membership in a protected group, the plaintiff's exercise of a constitutional right, or sheer malice.

*See United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (stating that even in a class of one equal protection claim, the plaintiff must assert that he or she has been intentionally treated differently than others who were similarly situated and that there is no rational basis for this difference in treatment); *Esmail v. MacRane*, 53 F.3d 176, 178-79 (7th Cir. 1995) (discussing the common types of equal protection claims).

In the present case, the Complaint fails to allege any facts suggesting that Chibber was treated differently from any other nurses on whom narcotics belonging to other persons had been found. The Complaint also fails to allege that the defendants had any sort of animosity or malice toward her, or that her treatment resulted from her exercise of a constitutional right. Clearly, the Complaint lacks a factual basis from which an equal protection claim could be inferred, much less stated.

The defendants contend that, in any event, the Eleventh Amendment bars Chibber's claims against the Nursing Board and all claims against the defendants in their official capacities. Chibber is bringing her claims pursuant to 42 U.S.C. § 1983, which provides the mechanism by which a person can obtain damages for any "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law. The Indiana State Nursing Board is an entity of the State, and "[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Alabama v. Pugh*, 438 U.S. (1978); *Council 31 of the Am. Fed. of State, Cnty & Mun. Emps. v. Quinn*, 680 F.3d 875, 881-82 (7th Cir. 2012). Indiana has not waived its Eleventh Amendment immunity. *See* Ind. Code 34-13-3-5(f). Nor did Congress, in passing § 1983, override

this immunity. "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989).

The Supreme Court has further determined that State is not considered to be a "person" for the purposes of § 1983. *Id*. at 71. Nor is a state official who is acting in his official capacity considered a person subject to suit under § 1983, as such actions are in fact suits against the official's office and thus, just another way of suing the State. *Id*.; see also *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 781 (7th Cir. 2010). Under the legal fiction of *Ex parte Young*, 209 U.S. 123 (1908), state officials may be sued in their official capacities for prospective injunctive relief under the theory that a state officer who violates the United States Constitution is stripped of his official character and immunity and is personally subject for the consequences of his actions. *Ameritech Corp. v. McCann*, 297 F.3d 582, 585-86 (7th Cir. 2002). However, this exception is limited to prospective relief. A state official sued in his or her official capacity may still not be sued for damages. *Id*. at 586.

Thus, the Eleventh Amendment completely bars Chibber' claims against the Nursing Board, whether for monetary damages or prospective relief. The Eleventh Amendment also bars Chibber's claims against all of the remaining defendants in their official capacities. None of the defendants are legally capable of reinstating Chibber's nursing license, which is the prospective relief she seeks.

Next, the defendants argue that Chibber's claims against Zoeller and Mader, in any capacity, are also barred by the doctrine of prosecutorial immunity. *See Butz v. Economou*, 438

U.S. 478, 517 (1978) (holding that officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication and attorneys who are prosecute such actions are entitled to absolute immunity).

Courts have repeatedly held since *Butz* that attorney generals and their deputies are entitled to absolute immunity in representing the state's interests in administrative proceedings and other civil litigation. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 396-97 (2d Cir. 2006) (affirming that an attorney general is entitled to absolute immunity relating to decisions regarding the prosecution of civil claims); *Barrett v. United States*, 798 F.2d 565, 573 (2d Cir.1986) (finding an assistant attorney general to be absolutely immune from liability when representing the state in a civil rights action); *Goncalves v. Reynolds*, 198 F. Supp. 2d 278 (W.D. N.Y. 2001) (decision to file criminal complaint and seek arrest warrant entitled to absolute immunity); *Schrob v. Catterson*, 948 F.2d 1402, 1411-13 (3d Cir. 1991) (finding that a prosecutor had absolute immunity in initiating an in rem forfeiture proceeding); *Demery v. Kupperman*, 735 F.2d 1139, 1143-44 (9th Cir.1984) (finding that deputy attorney general was entitled to absolute immunity in physician license revocation proceeding).

In the case at bar, Chibber has not alleged any actions by Zoeller or Mader that were not connected with the initiation of the administrative action against her or the litigation of that action. Clearly, therefore, Zoeller and Mader are entitled to absolute immunity.

The defendants also argue that Burghduff, who is a member of the Nursing Board, is immune from suit under the doctrine of quasi-judicial immunity. Members of an administrative agency are entitled to absolute judicial immunity when their role is judicial in nature *See, e.g., Capra v. Cook Cnty Bd of Review*, --- F.3d ---, 2013 WL 4441929, at *3-4, (7th Cir. 2013)

11

(finding that individual members of the tax review board were entitled to quasi-judicial absolute immunity); *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir.2001) (stating that members of quasi-judicial adjudicatory bodies are entitled to absolute immunity "when they perform duties that are functionally comparable to those of a judicial officer"). Absolute immunity does not leave a plaintiff without a remedy. It merely means that if an official serving in a judicial role errs or misbehaves, the plaintiff's remedy is through the appellate process. *Dawson v. Newman*, 419 F.3d 656, 661-62 (7th Cir. 2005). Absolute immunity has been extended to state board members who oversee a medical practitioner's actions or qualifications. *See, e.g., Horwitz v. State Bd. of Med. Examiners*, 822 F.2d 1508, 1513-15 (10th Cir, 1987) (providing absolute immunity to all the board members and not just the hearing officer). *See also Bloom v. New York State Comm'r of Health*, 73 F.2upp.2d 732, 740 (E.D. N.Y. 2004; *Mason v. Arizona*, 260 F. Supp.2d 807, 822 (D.Ariz. 2003).

In the present case, Chibber's allegations against Burghduff relate solely to his role at the prehearing. To the extent that any of his conduct arose to a constitutional violation, Chibber's remedy was to appear before the Nursing Board, and, if dissatisfied, to seek judicial review as allowed by IAOPA.

In any event, even if Zoeller, Mader and Burghduff were not entitled to absolute prosecutorial or judicial immunity, they and Franko are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity

applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (quotations and citations omitted). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Forman v. Richmond Police Dept.*, 104 F.3d 950, 959 (7th Cir. 1977) (citing *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)). To escape the doctrine of qualified immunity, the constitutional right must be so clearly established that a reasonable state official would understand that they are violating that right. *Id.* at 959 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Here, aside from the federal perjury statutes discussed below, the only factual allegations against Zoeller, Mader, and Burghduff are that they initiated or participated in the litigation of a license enforcement action; that Zoeller added a notation to Chibber's nursing license, and that Mader and Burghduff were uncooperative and/or abusive during a pre-hearing/settlement conference. The only factual allegations against Franko are that she filed a Consumer Complaint and failed to investigate certain matters. As none of these actions violate any clearly-established right, dismissal of Chibber's Section 1983 claims is appropriate.

Moreover, Chibber's civil rights claims against Franko are barred by the statute of limitations. In Section 1983 cases, the court uses the statute of limitations and tolling rules that states employ for personal-injury claims. *Richards v. Mitcheff*, 696 F.3d 635, 636 (7th Cir. 2012) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985) and other Supreme Court decisions). The statute of limitations for such claim in Indiana is two years. *Id.*; see also Ind. Code § 34–11–2–4.

It is clear that all of Chibber's claims against Franko concern the detective's filing of the Consumer Complaint and her preceding investigation. The Complaint alleges that the Consumer

13

Complaint was filed on July 21,2010, was filled out by Franko between March 30, 2009 and July 21, 2010, and that Chibber received a copy of the Consumer Complaint and learned about Franko's statements "at the end of August 2010." Compl. 2, 4. Chibber asserts that this is also when she received notice that she was in violation of a criminal statute, and that she was being charged with a Class C felony. *Id*. at 2, 3. And she asserts that a month later, that the administrative action began. *Id*. Thus, even if Chibber had any valid civil rights claims against Franko, the claims would be barred by the statute of limitations.

Lastly, the defendants claim that Chibber's perjury and subornation of perjury charges lack any factual basis as Chibber has failed to allege any facts to support a federal perjury claim against Franko or a federal subornation of perjury claim against Mader. Chibber's Complaint essentially alleges that Franko committed perjury by reporting information that she had received from others and then affirming that the information she provided was based on her personal knowledge. This in itself is not sufficient factual basis for a perjury charge, particularly when Franko clearly identifies the sources of her information in the attachments to the Consumer Complaint and is merely affirming her personal knowledge of these sources and that the statements were made to her.

In any event, even when personal knowledge is lacking, this is not a sufficient basis to bring a perjury charge. *See, e.g., Jones v. State of Md.*, 584 F.2d 663, 665 (3d Cir. 1978 (stating, with regard to a search warrant affidavit, that the affiant's lack of personal knowledge only relates to the sufficiency of the affidavit and "has no relevance to defendant[ officer's] liability under the civil rights acts for perjury"). Further, perjury and subornation of perjury under the federal statute both require both facts showing the charged person's knowledge of the falsity of the

statements. 18 U.S.C. §§ 1621, 1622; *see also, e.g., United States v. Mount*, 896 F.2d 612, 624 (1st Cir. 1990) (stating that an FBI agent's sworn misattribution was not perjury "unless the agent did not believe what he said to be true").

Additionally, Chibber has not alleged facts from which any violations of 47 U.S.C. § 505 (a statute relating to the venue for the enforcement of certain regulations relating to telegraph, telephone and broadcast operators), 18 U.S.C. § 1342 (a postal fraud statute) or any federal venue or criminal statutes could be inferred. Even if such violations of federal criminal statutes or venue statutes could be inferred, Chibber has no private right of action arising from these violations. *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619, (1973) (stating that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Lynch v. Bulman*, Case No. No. 06-1018, 2007 WL 2993612, at *2 (10th Cir. Oct 15, 2007) (noting that federal criminal statutes do not provide plaintiffs with a civil cause of action). Accordingly, this court holds that Chibber has failed to state a claim, and her Complaint will be dismissed.

## Conclusion

On the basis of the foregoing, the defendants' motion for judgment on the pleadings [DE 44] is hereby GRANTED.

Entered: February 19, 2014.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court